UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY JOHNS,<br><br>                                    Plaintiff,<br><br>v.<br><br>D. HJERPE, Chief Medical Doctor; J. ZAMORA, Registered Nurse,<br><br>                                    Defendants. | Case No.: 14cv02995-MMA (KSC)<br><br>**ORDER GRANTING DEFENDANT J. ZAMORA'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 35] |

    Plaintiff Gerry Johns, a state prisoner proceeding *pro se*, commenced this civil rights action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to adequate medical care while incarcerated at Calipatria State Prison in Calipatria, California. *See* Doc. No. 17. Defendant J. Zamora, a nurse who treated Plaintiff, moves for summary judgment. *See* Doc. No. 35. For the reasons set forth below, the Court **GRANTS** Defendant Zamora's motion.

1

# BACKGROUND[1]

On April 8, 2013, Plaintiff was allegedly assaulted by two inmates while he was in the exercise yard at Calipatria State Prison.  During the altercation, a correctional officer discharged a direct impact projectile from a 40 mm launcher ("impact projectile"), striking Plaintiff's left forearm.  Plaintiff was subsequently escorted to the medical clinic, where he received treatment.  Plaintiff informed the examining nurse that he was suffering from "excruciating pain" as a result of having been struck by the impact projectile in his left forearm.  Doc. No. 41 at 17.[2]  The nurse noted in the medical report that Plaintiff suffered abrasions and presented with swelling on his left forearm and forehead.  According to Plaintiff, the nurse provided him with an ice pack and instructed him to apply the ice pack to the swollen area of his forearm.  After the incident, Plaintiff was temporarily rehoused in the administrative segregation housing unit ("Ad Seg").

Defendant Zamora is a Registered Nurse employed by the California Department of Corrections and Rehabilitation ("CDCR"), and assigned to Calipatria.  On April 9, 2013, while Defendant Zamora made his medical rounds in Ad Seg, Plaintiff called Defendant over to his cell.  According to Plaintiff, he told Zamora that his left forearm had been hit by an impact projectile, he was experiencing "excruciating pain," his forearm had turned purple, and he "could feel a bone protruding from his forearm."  Doc. No. 41 at 18.  In response, Zamora provided Plaintiff with a Health Care Services Request Form ("Health Form").  Plaintiff filled out the Health Form and submitted it to the Ad Seg officer on duty.

---

[1] These material facts are taken from Plaintiff's verified First Amended Complaint; Defendant's Separate Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment; Defendant's Compendium of Exhibits in Support of the Motion for Summary Judgment; Defendant's declaration in support of his motion for summary judgment; Plaintiff's declaration in support of his opposition to Defendant's motion for summary judgment; and Plaintiff's exhibits.  Where a material fact is in dispute, it will be so noted.  Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[2] Citations refer to the pagination assigned by the CM/ECF system.

Around 9:00 a.m. on April 10, 2013, Defendant Zamora reviewed Plaintiff's Health Form, in which Plaintiff indicated as follows: "Got shot with 40mm launcher need check for possible crack and or damage [*sic*]." Doc. No. 35-3 at 25. Zamora scheduled Plaintiff for an evaluation the following morning.

At 11:00 a.m. on April 11, 2013, Zamora examined Plaintiff in the Ad Seg medical clinic. In an Encounter Form – Musculoskeletal Complaint ("Encounter Form"), Zamora documented the following observations: (1) Plaintiff complained of pain in his left forearm; (2) Plaintiff explained that the pain had begun two days earlier; (3) Plaintiff described his pain as an ache in the range of 3-4 out of 10 on the pain scale; (4) there was no discoloration, bruising, or swelling in Plaintiff's left arm; and (5) Plaintiff had full range of motion in his arm. *See* Doc. No. 35-3 at 26. Zamora did not refer Plaintiff to a medical doctor. Zamora prescribed pain medication, and advised Plaintiff to submit another Health Form if his symptoms persisted, deteriorated, or he experienced an increase in swelling or pain. Plaintiff indicated verbally that he understood these instructions. This was the only instance in which Zamora treated Plaintiff for the injury to his left arm.

Plaintiff did not complain specifically about his left arm again until June 28, 2013, despite seeking out medical treatment several times over the course of the intervening months for a variety of other ailments. On July 3, 2013, Plaintiff's arm was X-rayed, and Dr. Hjerpe,[3] diagnosed Plaintiff with a mid-shaft ulnar fracture. *See* Doc. No. 35-3 at 42. In his report, Dr. Hjerpe noted that Plaintiff reported pain and swelling in his arm since being shot on April 8, 2013. On August 22, 2013, Plaintiff was examined via video conference by an orthopedic specialist, Dr. Foerster. In his report, Dr. Foerster noted that Plaintiff had suffered a "[l]eft ulnar midshaft slightly comminuted and slightly displaced fracture – 4-1/2 months out, healing but not healed." *Id.* at 45.

---

[3] Plaintiff originally brought this action against both Dr. Hjerpe and Defendant. *See* Doc. No. 17. The Court dismissed Plaintiff's claim against Dr. Hjerpe pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 22.

**DEFENDANT'S MOTION**

Defendant Zamora moves for summary judgment, arguing that the undisputed facts demonstrate that he did not act with deliberate indifference to Plaintiff's serious medical need. Plaintiff contends that genuine issues of fact exist regarding whether Zamora violated Plaintiff's Eighth Amendment rights when he delayed treatment and incorrectly diagnosed Plaintiff's injury.[4]

### *1. Legal Standard*

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted). In applying the standard set forth under Rule 56, district courts must

---

[4] In his opposition brief, Plaintiff appears to assert for the first time in this litigation a claim pursuant to California Government Code 845.6, arguing that Defendant Zamora violated the state statute "by failing to ensure the plaintiff was given immediate medical care." Doc. No. 41 at 15. Since a defendant must have "fair notice" of the claims and the grounds for relief, Plaintiff cannot raise new claims or factual allegations in opposition to Defendant's summary judgment motion. *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006).

"construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### 2. *Eighth Amendment Claim*

Prisons must provide medical care for their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Failure to do so can amount to an Eighth Amendment violation under 42 U.S.C. § 1983. *Id.* at 105. To succeed on an Eighth Amendment claim for deficient medical care, a plaintiff must show "deliberate indifference" to his or her "serious medical needs." *Id*. at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (*overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

To satisfy the objective standard, a plaintiff must prove the existence of a serious medical need. *Estelle*, 429 U.S. at 104. A serious medical need exists whenever failure to provide treatment "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, (9th Cir. 1997) (en banc)) (internal quotation marks omitted). "Indications that a plaintiff has a serious medical need include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin*, 974 F.2d at 1059-60).

A prison official is deliberately indifferent whenever the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th

Cir. 2002)) (internal quotation marks omitted). This requires more than mere misdiagnosis, medical malpractice, or even gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). But deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

    a) <u>Serious Medical Need</u>

Defendant Zamora does not specifically address this element of Plaintiff's Eighth Amendment claim in his motion, and it is undisputed that Plaintiff suffered an injury to his left arm after being hit with an impact projectile on April 8, 2013.

    b) <u>Deliberate Indifference</u>

Plaintiff alleges that Defendant Zamora was deliberately indifferent to his serious medical need by delaying Plaintiff's treatment and misdiagnosing Plaintiff's injury.

Zamora argues that the undisputed facts demonstrate that he did not act with deliberate indifference to Plaintiff's serious medical need. Specifically, Zamora asserts that he followed CDCR protocol when reviewing Plaintiff's Health Form on April 10, 2013, and "promptly" scheduling and evaluating Plaintiff the following day, April 11, 2013. Doc. No. 35-7 at 2. During Plaintiff's examination, Zamora "took note of Plaintiff's left forearm complaint, and set forth all pertinent details on the [Encounter Form]." *Id*. Plaintiff reported an "ache" in his left forearm that had started two days earlier and "was 3-4 out of 10" on the pain scale. *Id*. Zamora documented that there was no change in color or swelling in Plaintiff's arm, and that Plaintiff had "full range of motion in his left arm/elbow." *Id*. Zamora concluded based on the fifteen minute examination that Plaintiff had a bruise, not a fracture, and therefore gave Plaintiff "appropriate anti-inflammatory/pain medication." *Id*. at 3. According to Zamora, he "provided Plaintiff with reasonable care and appropriate attention to his reported forearm injury on or about April 11, 2013 based on my training, experience, evaluation, and judgment." *Id*.

Plaintiff does not dispute the accuracy of Zamora's observations during the examination. Instead, Plaintiff believes that Zamora "should have provided me with immediate medical care and summoned a doctor whom would have sought an X-ray and had my arm placed in a cast to prevent further damage and relieve me of the pain." Doc. No. 41 at 19. However, Plaintiff's disagreement with Zamora's prescribed course of treatment fails to establish deliberate indifference. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim").

As evidence of deliberate indifference, Plaintiff asserts that Zamora told him to "stop complaining about a bruised forearm." Doc. No. 41 at 18. While this statement may have been insensitive, it simply reflects Zamora's diagnosis of a bruised forearm. Even viewed in the light most favorable Plaintiff, the statement is not sufficient, without additional facts, to create a triable issue as to whether Zamora's diagnosis and decision to treat Plaintiff with pain relievers constituted deliberate indifference to Plaintiff's serious medical need. A misdiagnosis, even if grossly negligent, is insufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 106. There is no other evidence before the Court to suggest that Defendant Zamora treated Plaintiff with animus of any kind. And an inadvertent failure to provide adequate medical care, or negligence in diagnosing or treating a medical condition, does not violate the Eighth Amendment. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

As noted above, Plaintiff also claims that Zamora purposefully delayed treatment for Plaintiff's injury. A delay in providing medical care may manifest deliberate indifference. *Estelle*, 429 U.S. at 104-05. Zamora does not address the personal interaction that Plaintiff alleges occurred on April 9, 2013, and he provides no evidence to directly contradict Plaintiff's sworn statement that on that day, while Zamora made his

rounds in Ad Seg, Plaintiff advised Zamora of his injury and his pain level.[5]  *See* Doc. No. 41 at 18.  Nor does Zamora dispute that instead of providing Plaintiff with immediate medical attention on April 9, 2013, he provided Plaintiff with a Health Form, which he did not review until the following day.

A defendant's purposeful failure "to respond to a prisoner's pain or possible medical need," may be sufficient under certain circumstances to constitute deliberate indifference.  *May v. Baldwin*, 109 F.3d 557, 566 (9th Cir. 1997) (internal quotation marks omitted).  Zamora provides no explanation for the decision to solicit information from Plaintiff via a Health Form instead of administering immediate assistance, in light of Plaintiff's verbal description of his injury and pain level.  However, an isolated incident of neglect or failure to provide immediate treatment generally does not rise to the level of a constitutional violation, particularly if there is no evidence to suggest that the prisoner required urgent care.  *See McGuckin*, 974 F.2d at 1060-61 (repeated failure to properly treat an inmate or a single failure that is egregious strongly suggests deliberate indifference); *Wood*, 900 F.2d at 1334 ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.").

The Health Form provided to Plaintiff included a clear, written advisement that "[i]f you believe this is an urgent/emergent health care need, contact the correctional officer on duty."  Doc. No. 35-3 at 25.  According to Plaintiff, he "filled out the form and gave it to the ad. seg. Officer with the request that he give it to the defendant."  Doc. No. 41 at 18.  Plaintiff does not allege to have informed the Ad Seg officer that he was suffering from an urgent health care need, nor did he indicate so on the Health Form.  Zamora reviewed the Health Form less than 24 hours later, and scheduled Plaintiff for an

---

[5] In his Expert Witness Report, Dr. Barnett states, without referring to a specific date, that "Plaintiff did not tell [Defendant] that his arm was purple or that he felt a protruding bone." *Id.* at ¶ 5. Dr. Barnett appears to base this conclusion on the fact that Plaintiff did not include the information in the Health Form. However, Dr. Barnett provides no basis upon which to conclude that Plaintiff did not communicate with Zamora verbally on April 9, 2013.

8

appointment the next day.  Under these circumstances, Defendant Zamora's chosen course may have resulted in a 48 hour delay in Plaintiff's treatment, but did not run afoul of the Eighth Amendment.

Even if Zamora's actions on April 9, 2013 rose to the level of deliberate indifference, Plaintiff fails to demonstrate that he suffered harm as a result of the delay in care.  *See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).  The Eighth Amendment is violated only if "delays occurred to [a patient] with problems so severe that delays would cause significant harm and that [the defendant] should have known this to be the case."  *Hallett*, 296 F.3d at 746.  Plaintiff fails to specify the harm caused by the 48 hour delay between his initial encounter with Zamora and his subsequent medical appointment.  Plaintiff states that at the time he spoke with Zamora on April 9, the day after he suffered the injury, he was "experiencing excruciating pain."  Doc. No. 41 at 18.  However, Plaintiff does not indicate that the pain worsened between the time that he received the Health Form and the time Zamora examined him.  Furthermore, Plaintiff does provide any evidence to contradict Zamora's observation on the Encounter Form that Plaintiff reported a relatively lower pain level of 3-4 out of 10 two days later.  Plaintiff does not indicate that any additional problems arose during the 48 hour delay in treatment.  Absent any specific facts regarding his condition during this 48 hour period, demonstrating that it worsened, or that his pain substantially increased before Zamora treated him, Plaintiff's Eighth Amendment claim fails.

In sum, no reasonable jury could find that Defendant Zamora acted with the type of deliberate indifference that satisfies the subjective standard of Plaintiff's Eighth Amendment claim.[6]  Even assuming Zamora misdiagnosed Plaintiff's injury, the

---

[6] Defendant Zamora also argues that, even if there are triable issues of fact as to Plaintiff's Eighth Amendment claim, he is entitled to qualified immunity from suit.  Because the Court finds that no constitutional violation occurred, "there is no necessity for further inquiries concerning qualified

misdiagnosis was the result of gross negligence, at most, and there is no evidence in the record that the delay in treatment specifically caused Plaintiff harm.  As such, summary judgment in Zamora's favor is appropriate.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Zamora's motion for summary judgment.  The Clerk of Court is instructed to enter judgment accordingly, terminate any pending motions, deadlines, or hearings, and close the case.

**IT IS SO ORDERED**.

DATE: March 1, 2017

HON. MICHAEL M. ANELLO
United States District Judge

---

immunity." *Saucier v. Katz*, Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling *Saucier*'s requirement that the two prongs of the qualified immunity analysis be decided sequentially)).